## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

PATRICIA SCOTT,

        Plaintiff,

v.

CAROLYN W.  COLVIN,
**Acting Commissioner of Social Security,**

        Defendant.

Case No.  13-CV-1302-DDC

## MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, as amended.  Plaintiff has filed a brief (Doc. 7) seeking judicial review of the Commissioner's decision.  The Commissioner has filed a brief in opposition (Doc. 12) and submitted the administrative record (Doc. 6) contemporaneously with her Answer (Doc. 5).  When plaintiff filed her reply brief (Doc. 13), this matter became ripe for determination.  Having reviewed the administrative record and the briefs of the parties, the Court reverses the decision of the Commissioner, orders that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g), and remands the case to the agency for further proceedings consistent with this Order.

### I.      Factual Background and Procedural History

Plaintiff applied for Social Security Disability ("SSD") benefits alleging disability beginning December 15, 2006.  (R. 9)  The Social Security Administration denied plaintiff's application on October 18, 2010 (R. 53–61), and again denied it upon reconsideration on May

1

17, 2011 (R. 62–68).  Plaintiff requested a hearing by an Administrative Law Judge ("ALJ") (R. 69–70), who held a hearing on April 20, 2012 (R. 9).  During that hearing, plaintiff amended the date of her disability onset to October 6, 2010.  (R. 9)  On May 7, 2012, the ALJ issued a decision denying plaintiff's application for SSD benefits because the ALJ determined that plaintiff was not disabled on or before December 31, 2011 (the last date insured) under sections 216(i) and 223(d) of the Social Security Act (R. 16).  42 U.S.C. §§ 416(i), 423(d).

Plaintiff filed an appeal with the Appeals Council on May 21, 2012.  (R. 5)  The Appeals Council denied plaintiff's appeal on June 19, 2013.  (R. 1–3)  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review of the final decision denying her SSD benefits.

## II.     Legal Standard

### A.  Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  Judicial review of the Commissioner's denial of benefits is limited to whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); 42 U.S.C. § 405(g).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a scintilla," although it need not be a preponderance.  *Lax*, 489 F.3d at 1084 (citations and internal quotation marks omitted).  While

the courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Id.* (citation and internal quotation marks omitted). But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id.* (citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion." *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases. *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See*, *e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012);

*Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B. Disability Determination

Claimants seeking Social Security disability benefits carry the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted). In general,[1] the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)). As summarized by the Tenth Circuit, this familiar five-step process is as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [he or] she possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

---

[1]     The definition differs for minors and some blind individuals. *See* 42 U.S.C. §§ 423(d)(1)(B) (definition for some blind individuals); 1382c(a)(3)(C)(i) (definition for individuals "under the age of 18").

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. §

404.1520(b)–(g).  The claimant has the "burden of proof on the first four steps," but the burden

shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an

alternative work activity and that this specific type of job exists in the national economy.'"

*Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d

748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point

that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799,

801 (10th Cir. 1991).

## III.   Discussion

Plaintiff challenges the ALJ's findings in two ways.  She argues that (1) the ALJ failed to

state the weight given to the medical opinion of Dr. Steven Ruhlman and failed to explain the

reasons for the weight given to the medical opinions of Dr. Kenneth Sonnenschein and Anne

Schleicher, L.S.C.W., and (2) the ALJ erred by failing to conduct a proper credibility analysis of

plaintiff's testimony about her limitations and thereby improperly disregarded that testimony in

assessing plaintiff's ability to perform work at the light exertional level.  The Court addresses

each argument in turn.

### A.  Evaluation of the Medical Opinions

#### 1.  Standard for Evaluation of Medical Opinions

The applicable regulations require the ALJ to consider all medical opinions.  *See* 20

C.F.R. § 404.1527(c).  The ALJ must also discuss the weight he or she assigns to such opinions.

*See id.* § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the

weight given to the opinions of a State agency medical or psychological consultant or other

program physician, psychologist, or other medical specialist, as the administrative law judge

5

must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."[1]  20 C.F.R. § 404.1527(a)(2).  The regulations identify three types of "acceptable medical sources":  (1) treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or have had "an ongoing treatment relationship" with the claimant; (2) nontreating sources, *i.e.*, medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) nonexamining sources, *i.e.*, medical sources who render an opinion without examining the claimant.  *See id.* § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011).  In general, the Commissioner gives more weight to opinions from examining sources than to opinions from nonexamining sources.  20 C.F.R. § 404.1527(c)(1).  And the Commissioner generally gives more weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

---

[1]     This regulation reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case"—opinions on such issues do not constitute medical opinions under the regulations.  20 C.F.R. § 404.1527(d).  And "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."  Policy Interpretation Ruling Titles II & XVI:  Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96–5p, 1996 WL 374183, at *2 (S.S.A. July 2, 1996).  But such opinions "must never be ignored" and, when "evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors" set out in the regulations, 20 C.F.R. § 404.1527(c).  *Id.* at *3.

*Id.* § 404.1527(c)(2).

### a.  Treating Sources

The Commissioner will give a medical opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2).  The ALJ must consider these two factors when determining whether a treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citation omitted).  First, the ALJ must consider whether such an opinion is well-supported. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  If it has adequate support, then next the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id.* And an ALJ "may decline to give controlling weight to the opinion of a treating physician where he articulate[s] specific, legitimate reasons for his decision." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and internal quotation marks omitted).

The ALJ's inquiry does not end with determining that a medical opinion does not deserve controlling weight. *See Krauser*, 638 F.3d at 1330; *Watkins*, 350 F.3d at 1300.

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Krauser*, 638 F.3d at 1330; *accord Watkins*, 350 F.3d at 1300–01.  Unless the ALJ gives the treating source opinion controlling weight, it must evaluate the medical opinion in accordance with factors contained in the regulations.  *Id.* § 404.1527(c); Policy Interpretation Ruling Titles II &

7

XVI:  Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96–5p, 1996 WL 374183,

at *1, 3 (S.S.A. July 2, 1996).  Those factors are

> (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted); 20 C.F.R. §

404.152(c)(2–6).  After considering these factors, the ALJ must give reasons in the decision for

"the weight he [or she] ultimately assigns the [medical] opinion."  *Watkins*, 350 F.3d at 1301

(citation and internal quotation marks omitted).  However, the ALJ need not apply a factor-by-

factor analysis so long as the decision is "'sufficiently specific to make clear to any subsequent

reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for

that weight.'"  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350

F.3d at 1300).  When an ALJ completely rejects an opinion of a treating source, the ALJ must

state specific and legitimate reasons for the decision.  *Watkins*, 350 F.3d at 1301.

An ALJ must give a treating physician's opinion substantial weight "unless good cause is

shown to disregard it."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289–90

(10th Cir. 1995).  "When a treating physician's opinion is inconsistent with other medical

evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the

treating physician's report, not the other way around."  *Id.* at 290 (citation and internal quotation

marks and alterations omitted).  A reviewing court may reverse and remand a Social Security

case when the ALJ has failed to apply the correct legal standards when weighing the opinion of a

treating physician.  *Id.* at 289.  When an ALJ merely finds that an opinion from a treating

8

physician is not entitled to controlling weight but fails to state clearly how much weight is given to the medical opinion with good reasons for the weight assigned, "remand is required." *Krauser*, 638 F.3d at 1330.  But in other circumstances, a failure to address properly and weigh all opinions is subject to a harmless error analysis.  *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."  *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).  Consequently, absent inconsistencies between or among the medical opinions and the ALJ's residual functional capacity determination, any error in considering the opinions is harmless.  *Keyes–Zachary*, 695 F.3d at 1161–62.  And, where inconsistencies exist, the courts may

> supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### b.  Other Sources

In addition to evidence from acceptable medical sources, such as licensed physicians and psychologists, the Commissioner "may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work."  20 C.F.R. § 404.1513(d).  In 2006, the Social Security Administration recognized "the growth of managed health care" and the increasing role of non-acceptable medical sources, "such as nurse practitioners, physician assistants, and licensed clinical social workers," play in treating and evaluating claimants.  *See* Titles II & XVI:  Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering

9

Decisions on Disability by Other Governmental and Nongovernment Agencies, SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006) (hereinafter "SSR 06-03p").  It thus issued SSR 06–03p to clarify how ALJs "consider opinions and other evidence from medical sources who are not 'acceptable medical sources' and from 'nonmedical sources.'"  *Id.* at *4.

"The distinction between 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources' is necessary for three reasons:"  (1) evidence from an acceptable medical source is required to establish the existence of a medically determinable impairment; (2) medical opinions only come from acceptable medical sources; and (3) only such sources can be considered treating sources whose medical opinions may be entitled to controlling weight.  *Id.* at *2.  Distinguishing between acceptable and other sources facilitates the application of the Commissioner's regulations establishing an impairment's existence, evaluating medical opinions, and determining who qualifies as a treating source.  *Id.*

Licensed clinical social workers do not qualify as an acceptable medical source, even though they are medical sources.  *See id.*  But, although "these 'other sources' cannot establish the existence of a medically determinable impairment," which requires "evidence from an 'acceptable medical source,'" other sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.*  And, while the regulations "do not explicitly address how to consider relevant opinions and other evidence from 'other sources,'" such opinions and evidence "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id.* at *3.  By requiring ALJs to consider other factors brought to their attention, the regulations require consideration of evidence and opinions from other sources.  *Id.* at *4 (citing 20 C.F.R. §§ 404.1527, 416.927).

10

When considering opinion evidence from other sources, ALJs must use the same factors used to weigh the opinions from acceptable medical sources. *Id.* at *4–5. Of course, not every factor applies in every case—the evaluation of opinions from non-acceptable medical sources depends on the particular facts in each case. *Id.* at *5. With respect to weighing such opinions, SSR 06–03p states:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as . . . previously indicated in the preamble to [the] regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules . . . .

*Id.*

Because ALJs must consider all relevant evidence in a case record, they must consider all opinions from all medical sources—acceptable or not. *Id.* at *6. And SSR 06–03P explains the consideration given to opinions from "other sources." *Id.* It provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized

11

disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

*Id.*

### 2. Analysis

Turning to the medical opinions at issue in this case, plaintiff argues that the ALJ erred by failing to give any weight to the medical opinion of Dr. Steven Ruhlman and by failing to explain why she gave "little weight" to the medical opinions of Dr. Kenneth Sonnenschein and Anne Schleicher, L.S.C.W.

### a. Dr. Steven Ruhlman

The administrative record contains a medical opinion by Dr. Steven Ruhlman, completed on August 6, 2011, based on his examination of plaintiff on one occasion for fibromyalgia. (R. 497) Dr. Ruhlman opined that plaintiff had a history of widespread pain and exhibited pain in at least 11 of the 18 tender point sites consistent with fibromyalgia as identified by the American College of Rheumatology and the Center for Disease Control. (*Id.*) Dr. Ruhlman also noted that plaintiff suffers from morning stiffness and/or stiffness after sitting for a short period of time. (*Id.*) He additionally stated that plaintiff suffers from fatigue that is of sufficient severity and persistence to preclude full-time work, even in a sedentary position. (*Id.*) Finally, Dr. Ruhlman opined that "the effect of [plaintiff's] pain and/or the side effects of medication on [plaintiff's] ability to maintain attention and concentration" was "marked" and "precludes even unskilled, work-related tasks." (*Id.*)

As plaintiff concedes, Dr. Ruhlman's opinion is not entitled to controlling weight because he examined plaintiff only on one occasion, and therefore he is a nontreating source rather than a treating source. *See* 20 U.S.C. § 404.1502 (a nontreating source is an acceptable medical source

who has examined the claimant but does not have an ongoing treatment relationship); *see also Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir 2003) ("[T]he opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion.") (citation omitted).  However, medical opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1283 (D. Kan. 2011) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)) (further citations omitted).

Although Dr. Ruhlman was not a treating physician, the ALJ was still required to consider his opinion.  *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96–5p, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored.").  And the ALJ was required to provide the weight she assigned to Dr. Ruhlman's medical opinion.  *See id.* § 404.1527(e)(2)(ii).

> The ALJ described Dr. Ruhlman's treatment of plaintiff in her decision:
>
> In May 2011, the claimant began treatment by rheumatologist Steven Ruhlman, M.D., for complaints of diffuse myofascial pain through the neck, shoulder, low back and hips with associated sense of muscle weakness.  She also complained of intermittent numbness and tingling in her hands.  Upon examination she had positive Tinel's sign bilaterally.  Nerve conduction studies were consistent with a mild compression neuropathy of the left median nerve at the wrist.  In July 2011, the claimant had 17 of 18 fibromyalgia tender points.  (Exhibit 20F, 23F, 28F)

(R. 12)  Although the ALJ provided this description, she did not evaluate Dr. Ruhlman's opinion or explain the weight she was giving to the opinion, as she is required to do under the regulations.  *See* 20 C.F.R. §§ 404.1527(c), 404.1527(e)(2)(ii).

Defendant concedes that the ALJ did not evaluate Dr. Ruhlman's medical opinion in her decision, but argues that the omission is harmless error.  *See Allen v. Barnhart*, 357 F.3d 1140,

1145 (10th Cir. 2004) (recognizing the applicability of harmless error in the administrative review setting).  Defendant argues that Dr. Ruhlman's medical opinion is not particularly useful because it contains only a few checkmark conclusions (R. 497) and an examination note describing the diagnosis and treatment plan for plaintiff's fibromyalgia (R. 499).  Therefore, defendant contends, even if the ALJ failed to evaluate Dr. Ruhlman's opinion, the omission is harmless because the ALJ would not give the medical opinion significant weight.

But this error was not harmless because Dr. Ruhlman's medical opinion differed significantly from the ALJ's determination about plaintiff's limitations.  *See, e.g., Quintero v. Colvin*, __ Fed. App'x __, 2014 WL 2523705, at *4 (10th Cir. June 5, 2014) (holding the district court's failure to state the reasons it gave little weight to a medical opinion was not harmless error where there were significant differences in the mental limitations found by the doctor providing the opinion and those accepted by the ALJ).  The ALJ determined that plaintiff had the RFC to perform light work "including the ability to lift and carry 10 pounds frequently and 20 pounds occasionally and stand, walk and/or sit for 6 hours in an 8 hour day." (R. 13)  In contrast, Dr. Ruhlman opined that plaintiff suffers from fatigue that is of sufficient severity and persistence to preclude full-time work, even in a sedentary position, and that the effect of plaintiff's pain or the side effects of medication on plaintiff's ability to maintain attention and concentration was "marked" and precluded even unskilled, work-related tasks.  (R. 497)  As the Tenth Circuit explained in *Sitsler v. Barnhart*, 182 Fed. App'x 819 (10th Cir. 2006), "Soc. Sec. R. 96–8p specifically provides that '[t]he RFC assessment must always consider and address medical source opinions.  *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.*'"  *Id.* at 823 (citing Policy Interpretation Ruling Titles II & XVI:  Assessing Residual Functional Capacity in Initial

Claims, SSR 96–8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  Here, the RFC assessment

conflicted with Dr. Ruhlman's medical opinion, and the ALJ failed to explain why she did not

adopt his opinion.  Thus, the ALJ committed reversible error by failing to state in her decision

why she did not accept Dr. Ruhlman's opinion.  *See id.* (concluding that the ALJ committed

reversible error by failing to explain why he did not adopt a medical opinion that conflicted with

the RFC assessment).

Defendant argues that because Dr. Ruhlman's opinion consisted of a checklist statement,

the ALJ never would have given it significant weight even if she had considered the opinion.

But the Court cannot accepted "belated justifications for the weight assigned to the opinions;"

rather, the ALJ must make that determination upon remand.  *Quintero*, 2014 WL 2523705, at *4

(citing *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to

the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible

reasons for rejecting a physician's opinion in order to affirm.")); *see also Haga v. Astrue*, 482

F.3d 1205, 1207–08, (10th Cir. 2007) (a court "may not create or adopt post-hoc rationalizations

to support the ALJ's decision that are not apparent from the ALJ's decision itself.).  Therefore,

the Court must remand to the ALJ for the required evaluation of Dr. Ruhlman's medical opinion.

### b.  Dr. Kenneth Sonnenschein

The ALJ did consider the medical opinion of plaintiff's treating physician, Dr.

Sonnenschein, but gave his opinion "little weight."  (R. 14)  Dr. Sonnenschein treated plaintiff

from November 4, 2010 to August 31, 2011.  (R. 513)  On November 4, 2010, he diagnosed

plaintiff with Major Depressive Disorder and anxiety disorder with a GAF[2] score of 50.  (R. 524)

---

[2]      "GAF" stands for "Global Assessment of Functioning."  *Keyes–Zachary v. Astrue*, 695 F.3d
1156, 1162 (10th Cir. 2012).  "The GAF is a 100–point scale divided into ten numerical ranges, which

On April 7, 2011, Dr. Sonnenschein completed a mental disorder questionnaire form in which he assessed plaintiff's psychological limitations.  (R. 415–420)  He noted that plaintiff can drive by herself but frequently requires her husband to drive her because of her anxiety.  (R. 415)  He reported that plaintiff complained of depression and fibromyalgia with morbid thoughts.  (*Id.*)  Dr. Sonnenschein also noted that plaintiff had not received any inpatient psychiatric care in the past.  (*Id.*)  He stated that plaintiff had an anxious mood and flattened affect and that she struggled with remembering details such as medication names and doses.  (R. 416)  Dr. Sonnenschein described plaintiff as independent with her present daily activities but noted that she needs assistance with transportation due to anxiety.  (R. 417)  He also noted that plaintiff isolates herself to the house.  (R. 418)  In describing the patient's concentration and task completion, Dr. Sonnenschein opined that plaintiff struggles to sustain attention when anxious.  (R. 418)  In describing the patient's adaptation to work or work-life situations, Dr. Sonnenschein stated that plaintiff has minimal ability to adapt after being out of work since 2006 with continued isolation.  (*Id.*)  He diagnosed plaintiff with Major Depressive Disorder and anxiety disorder with a fair prognosis for improvement.  (R. 419)

---

permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning."  *Id.* at 1162 n.1.  A GAF score of 41 to 50 reflects "[s]erious symptoms" or "any serious impairment in social, occupational, or school functioning."  *Id.* (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000) ["DSM–IV–TR"] ).  A score of 51 to 60 indicates "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning."  *Id.* (same).

The current version of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders "DSM–5" (5th ed. 2013) no longer endorses use of a GAF score and recognizes that the score was discontinued for several reasons, "including its lack of clarity (i.e., including symptoms, suicide risk, and disabilities in descriptors) and questionable psychometrics in routine practice."  *See Martinez v. Colvin*, No. 13–CV–00985–MEJ, 2014 WL 2967600, at *3 n.4 (N.D. Cal. July 1, 2014); *accord Krchmar v. Colvin*, 548 F. App'x 531, 534 n.2 (10th Cir. 2013); *Williams v. Colvin*, 757 F.3d 610, 2014 WL 2964078, at *2 (7th Cir. July 2, 2014).  GAF scores remain germane to this case, however, because the medical and administrative records include references to them.

Dr. Sonnenschein completed an Affective Disorders Questionnaire on July 1, 2011.  (R. 507–512)  In it, he stated that plaintiff suffered from a "[d]isturbance of mood, accompanied by a full or partial manic or depressive syndrome, as evidenced by" depressive syndrome that included the following symptoms:  (1) anhedonia or pervasive loss of interest in almost all activities, (2) appetite disturbance with change in weight, (3) sleep disturbance, (4) psychomotor agitation or retardation, (5) decreased energy, (6) feelings of guilt or worthlessness, (7) difficulty concentrating or thinking, and (8) thoughts of suicide.  (R. 507).  Dr. Sonnenschein also noted on this form that plaintiff is "markedly limited"[3] in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 512)

On August 31, 2011, Dr. Sonnenschein opined that the severity of plaintiff's depression is shown by a score of 58 out of a possible 72 on the Clinically Useful Depression Outcome Scale.  (R. 513)  He also noted that plaintiff has had "significant difficulty with attention, concentration, energy, and ongoing physical pain related to Fibromyalgia."  (*Id.*)  Based on these symptoms, Dr. Sonnenschein diagnosed plaintiff with "Major Depressive Disorder as well as Anxiety Disorder not otherwise specified complicated by Fibromyalgia."  (*Id.*)  Dr. Sonnenschein noted that plaintiff was showing "some positive response" to medication, but that she still had "ongoing stresses including the recent information of her brother dying from terminal metastatic cancer."  (*Id.*)  Dr. Sonnenschein concluded that plaintiff's ongoing stresses as well as her ongoing medical and psychiatric conditions, "profoundly limit[] her functional capacity as indicated in the report previously submitted on July 1, 2011."  (*Id.*)

---

[3]     The form defines "markedly limited" as "[t]he patient's restriction in this area would be sufficient to preclude performance."  (R. 510)

The ALJ considered Dr. Sonnenschein's medical opinion, but gave it "little weight" in her analysis.  (R. 14)  She then provided several reasons why she was giving his medical opinion little weight.  First, the ALJ explained that while Dr. Sonnenschein had opined that plaintiff's mental limitations precluded her from performing all work, his treatment notes did not support such a severity of symptoms.  (*Id.*)  The ALJ noted that medications had helped alleviate some of plaintiff's symptoms.  (R. 12)  This is consistent with Dr. Sonnenschein's opinion that plaintiff was showing some positive response to medication.  (R. 513)  The ALJ also concluded that the forms completed by Dr. Sonnenshein "appear[ed] to be based solely on the [plaintiff's] subjective complaints rather than any true, objective testing."  (*Id.*)  Finally, the ALJ determined Dr. Sonnenschein's opinions about plaintiff's residual functional capacity and whether plaintiff is disabled were not medical issues about the nature and severity of an individual's impairments but were administrative findings that are reserved to the Commissioner.  (*Id.*)

Plaintiff asserts that the ALJ failed to explain properly why she was giving Dr. Sonnenschein's medical opinion little weight.  More specifically, plaintiff argues that the ALJ erred by not providing specific and legitimate reasons for giving less than controlling weight to the medical opinion of a treating a physician.  The Court disagrees.  As shown above, the ALJ provided several specific reasons she discounted Dr. Sonnenschein's medical opinion, including that it was inconsistent with his treatment notes, it appeared to be based on plaintiff's subjective complaints rather than objective evidence, and it opined on ultimate issues reserved for the Commissioner.

Plaintiff argues that the ALJ erred in finding that the medical evidence was based on subjective complaints rather than objective evidence.  Plaintiff cites some of Dr. Sonnenschein's observations and examinations of plaintiff as described in his treatment notes, and she argues

that this is objective evidence supporting Dr. Sonnenschein's medical opinion.  However, Dr. Sonnenschein's opinions also contain many references to plaintiff's subjective complaints.  (*See*, *e.g.*, R. 415–420 (plaintiff complains of depression and fibromyalgia with morbid thoughts, requires assistance with transportation, states that she isolates herself in the house)).  Thus, there is sufficient evidence in the record for the ALJ to find that Dr. Sonnenschein's opinion was based on plaintiff's subjective complaints.  The Court will not disturb that finding.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court only reviews the *sufficiency* of the evidence, not its weight, and where the evidence may support contrary findings, the court cannot displace the findings of the ALJ even if the court would have reached a different conclusion in a de novo review).

Plaintiff also criticizes the ALJ for failing to apply the factors in 20 C.F.R. § 404.1527 to determine how much weight to give Dr. Sonnenschein's opinion.  But the Tenth Circuit has explained that an ALJ need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion" as long as the ALJ's decision is "'sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'"  *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  Here, the ALJ provided several specific reasons why she was giving little weight to Dr. Sonnenschein's opinions, which is consistent with what she was required to do.  *See id.* (holding that where the ALJ provided "good reasons in his decision for the weight he gave to the treating sources' opinions," "[n]othing more was required in this case.")

Plaintiff additionally argues that the ALJ did not explain sufficiently how Dr. Sonnenschein's opinion conflicted with his treatment notes.  But the ALJ did describe Dr.

19

Sonnenschein's treatment in the decision, noting that plaintiff reported to Dr. Sonnenschein her symptoms were improving with medication and the progress notes showed that plaintiff was focused more on physical complaints rather than mental complaints. (R. 11–12 (citing Exs. 12F, 24F)) These findings are supported by the record and provide valid reasons for giving the treating source opinion less weight. *See*, *e.g.*, *Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991) (explaining that an impairment that can be controlled or remedied with treatment is not disabling). The ALJ also noted that plaintiff had never been to the emergency room or hospitalized due to mental symptoms and that her daily activities do not appear to be "that limit[ed] by her mental impairments, other than sometimes [needing] help with driving due to anxiety." (R. 12) Where the ALJ properly describes the inconsistencies in a treating sources' opinion, the ALJ may discount that opinion and refuse to give it controlling weight. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (holding that the ALJ "permissibly assigned low weight to the unsupported and seemingly inconsistent opinions" of a treating source). Here, the ALJ properly described the inconsistencies in Dr. Sonnenschein's opinion, and based on those inconsistencies, the ALJ did not error in assigning the opinion little weight.

Plaintiff also asserts that the ALJ did not explain why the medical opinions of the State agency physicians and psychologists outweighed the medical opinion of her treating physician, Dr. Sonnenschein. To support this argument, plaintiff relies on *Warren v. Barnhart*, No. 05-2331-JWL, 2006 WL 4050700 (D. Kan. July 10, 2006). But in that case, the ALJ's decision "contain[ed] no analysis of the [nonexamining] expert's medical opinion, evaluation of the opinion pursuant to the regulatory factors, or explanation of how the expert's opinion outweighs that of the treating physician." *Id.* at 7. In contrast in this case, the ALJ explained that she was giving "great weight" to the opinions of the State agency physicians and psychologists "because

20

they are compatible with the record, treatment notes and objective findings of record."  (R. 14)
The ALJ next explained why she was giving little weight to Dr. Sonnenschein's medical opinion
and provided specific reasons for that determination.  While the ALJ did not specifically state
that the State agency physicians and psychologists' opinions outweighed that of Dr.
Sonnenschein, the ALJ sufficiently explained why she gave more weight to one set of opinions
than the other.  *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498–1500
(10th Cir. 1992) (when the ALJ and Appeals Council gave specific and legitimate reasons for
rejecting the treating source's opinion and relying on the examining source's opinion); *see also
Kizer ex rel. Kizer v. Barnhart*, No. 04–1394–JTM, 2006 WL 681115, at *4 (D. Kan.  Mar. 14,
2006) (affirming ALJ's decision to give less than controlling weight to the treating physician and
substantial weight to the opinion of a state agency reviewing psychologist where ALJ made
specific findings supported by the record to support the weight given to each medical opinion);
Policy Interpretation Ruling Titles II & XVI:  Consideration of Administrative Findings of Fact
by State Agency Medical and Psychological Consultants and Other Program Physicians and
Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative
Review; Medical Equivalence, SSR 96–6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). ("In
appropriate circumstances, opinions from State agency medical and psychological consultants
and other program physicians and psychologists may be entitled to greater weight than the
opinions of treating or examining sources.")

Finally, plaintiff contends that the ALJ mistakenly stated that Dr. Sonnenschein's
medical opinion whether plaintiff is disabled was an issue reserved to the Commissioner.
Plaintiff contends this was an error because Dr. Sonnenschein did not provide an opinion about
plaintiff's RFC, but rather he provided an opinion on the severity of plaintiff's impairments

relative to work-related limitations.  In support of this argument, plaintiff cites *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011).  In *Krauser*, the treating physician provided "specific work-related functional limitations," but the ALJ rejected the specific findings and stated that the physician's opinion that the claimant could not perform even sedentary work activity was an administrative finding reserved to the Commissioner.  *Id.* at 1332.  The Tenth Circuit disagreed with the ALJ's ruling because the treating physician did not opine on the claimant's RFC but rather provided a medical opinion for use by the ALJ as adjudicator of the claim which is "precisely how the inquiry should proceed."  *Id.*  The court noted that though the treating physician's findings "would, if accepted, impact the ALJ's determination of RFC—they always do, because that is what they are for—but that does not make the medical findings an impermissible opinion on RFC itself."  *Id.*

*Krauser*, however, is different from this case.  Dr. Sonnenschien's findings were not as specific as the functional limitations described by the treating physician in *Krauser*.  In addition, the ALJ did not expressly reject Dr. Sonnenschien's opinion as an improper invasion of the administrative findings reserved to the Commissioner.  Rather, the ALJ recited that the regulations provide the Commissioner with final responsibility to determine these issues and treating source opinions on issues reserved to the Commissioner are never given controlling weight.  (R. 14–15)  The ALJ expressly stated, though, that "the opinions have not been ignored (SSR 96-5p)."  (R. 15)  And, as described above, the ALJ sufficiently considered Dr. Sonnenschien's opinion and provided several specific reasons why she gave "little weight" to his medical opinion.  The ALJ did not error in this analysis.  *See Fisher v. Astrue*, No. 09–4116–RDR, 2012 WL 405497, at *7 (D. Kan. Feb. 7, 2012) (distinguishing *Krauser* from the record in that case where the treating physician's findings in a questionnaire were not very specific and the

ALJ did not expressly reject the opinion "as an infringement upon the ALJ's role in the process.").

For all these reasons, the Court finds no error in the ALJ's explanation of the reasons she gave "little weight" to the medical opinion of Dr. Kenneth Sonnenschein. Thus, the Court affirms the ALJ's decision on this issue.

### c. Anne Schleicher, L.S.C.W.

The ALJ also considered the medical opinion of Anne Schleicher, a licensed clinical social worker who treated plaintiff, but gave her opinion "little weight." (R. 14) Plaintiff began counseling with Ms. Schleicher on November 10, 2010, because of increased anxiety and depressed mood. (R. 572) Plaintiff reported depressive symptoms of depressed mood, sleep problems, and crying spells. (*Id.*) She also reported anxiety symptoms of worries, fears, and feeling on edge. (*Id.*) Ms. Schleicher's impression was Generalized Anxiety Disorder (Code No. 300.02) with a GAF score of 56 (which indicates moderate impairment in social and occupational functioning). (R. 574); *Keyes–Zachary*, 695 F.3d at 1162 n.1.

On November 17, 2010, plaintiff reported to Ms. Schleicher that she was having difficulty with sleep and anxiety about finances. (R. 570) On March 2, 2011, plaintiff told Ms. Schleicher that she had a high level of anxiety because of family issues. (R. 569) On October 12, 2011, plaintiff reported that she had experienced several losses in the last few months; her ex-husband, brother, and uncle had passed away. (R. 567) Plaintiff reported feeling overwhelmed, and Ms. Schleicher noted that she was tearful during the session. (*Id.*) Plaintiff also reported that her increased anxiety was causing physical symptoms. (*Id.*) On October 27, 2011, plaintiff reported increased anxiety caused by family issues. (R. 566) On November 17, 2011, plaintiff reported that she had some good days and bad days, and Ms. Schleicher noted that

plaintiff tends to take on others' worries.  (R. 565)  On December 7, 2011, plaintiff reported to Ms. Schleicher that things were going a little better and her emotions were a little more in balance.  (R. 564)  Plaintiff reported that she continued to struggle with family issues that increase her anxiety and that she continues to worry about everyone else.  (*Id.*)

On November 30, 2011, Ms. Schleicher completed a Mental Residual Functional Capacity Assessment for plaintiff.  (R. 527–29)  On that form, Ms. Schleicher stated that plaintiff was "markedly limited"[4] in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms.  (R. 528)  Ms. Schleicher also found plaintiff "markedly limited" in her ability to understand, remember, and carry out instructions and in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (R. 527)

The ALJ gave Ms. Schleicher's opinion "little weight" for several reasons she explained.  (R. 14)  First, the ALJ explained that while Ms. Schleicher had opined that the plaintiff's mental limitations preclude her from working, Ms. Schleicher's own treatment notes did not support this severity of symptoms.  (*Id.*)  The ALJ next found that a review of Ms. Schleicher's notes showed that plaintiff's anxiety "stems from transient family issues versus any chronic symptomatology that would preclude all work."  (*Id.*)  The ALJ noted, moreover, that the licensed social worker is not an acceptable medical source under the regulations.  (*Id.*)  Finally, the ALJ rejected Ms. Schleicher's opinion about plaintiff's RFC and whether she is disabled because they are not medical issues about the nature and severity of an individual's impairments but are administrative findings that are dispositive to the case.  (*Id.*)

---

[4]      The form defines "markedly limited" as "[t]he patient's restriction in this area would be sufficient to preclude performance."  (R. 527)

As a licensed clinical social worker, Ms. Schleicher is not "an acceptable medical source."  SSR 06-03p, 2006 WL 2329939, at *2.  Nevertheless, "'[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"  *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting SSR 06-03p, 2006 WL 2329939, at *3).  "[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) . . . apply equally to 'all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other [non-medical] sources.'"  *Id.* (quoting SSR 06-03p, 2006 WL 2329939, at *4).  Under SSR 06-03p, an ALJ must "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* (quoting SSR 06-03p, 2006 WL 2329939, at *6).  But, not every factor applies in every case—the evaluation of opinions from non-acceptable medical sources depends on the particular facts in each case.  SSR 06-03p, 2006 WL 2329939, at *5.

Here, the ALJ appropriately considered the opinions of Ms. Schleicher and assigned them little weight based on evidence in the record.  The ALJ found that while Ms. Schleicher had opined that plaintiff's mental limitations preclude her from working, Ms. Schleicher's own treatment notes did not support this severity of symptoms.  (R. 14).  This is consistent with Ms. Schleicher's treatment notes of November 17, 2011, which stated that plaintiff has some good days and bad days, and the treatment notes of December 7, 2011, in which plaintiff reported to Ms. Schleicher that things were going a little better and her emotions were a little more in balance.  (R. 564, 565)  The ALJ also concluded that Ms. Schleicher's notes showed that

25

plaintiff's anxiety "stems from transient family issues versus any chronic symptomatology that would preclude all work." (R. 14)  This is also consistent with the record which contains multiple references in Ms. Schleicher's treatment notes to plaintiff's increased anxiety due to family issues or the loss of family members.  (R. 566, 567, 569)  The ALJ did not err in explaining the weight it gave to Ms. Schleicher's opinion.[5]  Therefore, the Court affirms the ALJ's decision on this issue.

### B.  Credibility

Plaintiff argues that the ALJ erred by failing to conduct a proper credibility analysis, and as a result, improperly disregarded plaintiff's statements about her limitations in assessing her ability to perform work at the light exertional level.  The Court will not decide this issue because the ALJ's resolution of the case on remand may affect it, after the ALJ further considers Dr. Ruhlman's medical opinion, as described above.  *See Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011) ("This finding as to [claimant's] credibility may be undercut by reconsideration on remand of the treating physician's opinions, which clearly support his subjective complaints—indeed, if those opinions were deemed controlling, [the claimant] would . . . have to be found disabled, obviating further inquiry into [claimant's] credibility.")

---

[5]      Plaintiff also argues that the ALJ erred by stating that Ms. Schleicher's medical opinions improperly addressed issues reserved to the Commissioner.  For the same reasons the Court declined to find error with the ALJ's consideration of Dr. Sonnenschien's opinions, the Court also rejects this argument as applied to Ms. Schleicher's opinions because her opinions were not as specific as the medical opinion at issue in *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011), and the ALJ expressly stated that her opinion was not ignored.  (R. 15)  Thus, the Court finds no error in the ALJ's consideration of Ms. Schleicher's opinions.  *See Fisher v. Astrue*, No. 09–4116–RDR, 2012 WL 405497, at *7 (D. Kan. Feb. 7, 2012) (distinguishing *Krauser* from the record in that case where the treating physician's findings were not very specific and the ALJ did not expressly reject the opinion "as an infringement upon the ALJ's role in the process.").

However, the Court takes this opportunity to clarify a few points for consideration on remand.  First, the ALJ found that plaintiff's "daily living activities are consistent with light work, as she cooks simple meals, does laundry, shops for groceries and basic needs, and cleans the house."  (R. 13)  But plaintiff stated that she has "difficulty completing light household chores and take[s] rest breaks due to fatigue and pain in [her] back" and "difficulty completing tasks and take[s] frequent rest breaks due to pain throughout [her] body."  (R. 187, 190)  She also stated that she shops only once a month and while shopping, she "lean[s] against the cart for support due to poor balance and pain in [her] back."  (R. 187)  She also relies on her husband to retrieve items from the shelf and unload heavier groceries due to fatigue, weakness, and pain in her back and shoulder.  (*Id.*)  Second, the ALJ noted that the plaintiff "visits her daughter and sees her grandchildren three times a week."  (R. 14)  But plaintiff's daughter reported that plaintiff rarely left the house on her own and only drives short distances to places with which she is familiar.  (R. 199)  Finally, the ALJ found that plaintiff "reported watching television a lot, which suggests adequate attention and concentration."  (R. 14)  But plaintiff actually reported that she has "difficulty watching TV due to lack of focus and concentration."  (R. 185, 188)

While the ALJ's description of plaintiff's ability to perform such activities, at first glance, sounds inconsistent with plaintiff's self-described limitations, the "specific facts behind the generalities paint a very different picture."  *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011).  Plaintiff's complaints, when viewed in greater detail, support her claims of significant physical limitation and contradict the ALJ's determination that plaintiff is capable of performing work at the light exertional level.  "'On remand, the ALJ should keep in mind that 'sporadic performance of household tasks or work does not establish that a person is capable of engaging

27

in substantial gainful activity.'"  *Id.* at 1333 (*Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

IV.  **Conclusion**

Based on the above analysis, the Court reverses and remands the Commissioner's decision.  Thus, the Court directs that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g), reversing the Commissioner's decision and remanding the case for further proceedings consistent with this order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security Disability benefits is **REVERSED** and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case to the agency for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**Dated this 4th day of September, 2014, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**